UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JIMMY D.,

                              Plaintiff,

v.                                                              5:23-CV-00626 (MAD/TWD)

COMMISSIONER OF SOCIAL
SECURITY,

                              Defendant.
_____

APPEARANCES:                                                    OF COUNSEL:

LAW OFFICES OF STEVEN R. DOLSON, PLLC           STEVEN R. DOLSON, ESQ.
  *Attorney for Plaintiff*
6320 Fly Rd. Ste. 201
Syracuse, NY 13202

SOCIAL SECURITY ADMINISTRATION                  JASON P. PECK, ESQ.
OFFICE OF GENERAL COUNSEL
  *Attorney for Defendant*
6401 Security Boulevard
Baltimore, MD 21235

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

# REPORT AND RECOMMENDATION

      This matter was referred to the undersigned for Report and Recommendation by the Honorable Mae A. D'Agostino, United States District Judge, pursuant to 28 U.S.C. § 636(b) and Northern District of New York Local Rule 72.3. This case has proceeded in accordance with General Order 18 of this Court which sets forth the procedures to be followed when appealing a denial of Social Security benefits. Both parties have filed briefs. (Dkt. Nos. 9, 10.) Oral argument was not heard. For the reasons discussed below, the Court recommends the

Commissioner's decision be vacated, and this matter be remanded back to the Social Security Administration for further proceedings consistent with this Report and Recommendation.

**I.    BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff was born on February 4, 1976.  (Administrative Transcript at 306.[1])  He completed 10th grade and did not obtain a GED.  (T. at 49.)  He worked as a project supervisor and truckdriver from 2000 to 2020.  (T. at 32-37.)  On January 6, 2021, Plaintiff protectively filed for Social Security Disability Insurance ("SSDI") benefits alleging an onset date of December 25, 2019.  (T. at 303.)  On January 15, 2021, Plaintiff filed for Supplemental Security Income ("SSI") alleging an onset date of December 1, 2019.  (T. at 272-73.)  Plaintiff alleged disability as a result of diabetes, diabetic neuropathy, chronic pancreatitis, and hypertension.  *Id.*  Plaintiff did not allege vision impairments at that time.  *See id.*

Plaintiff's applications were initially denied on March 30, 2021.  (T. at 108.)  His SSDI and SSI claims were reconsidered and denied on May 19, 2021.  (*See* T. at 121, 135 (undated); *see also* T. at 12 (reflecting a denial date of May 19, 2021).)  Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") on July 20, 2021, and, on December 1, 2021, ALJ Robyn Hoffman conducted a hearing.  (T. at 25.)  The ALJ heard the testimony of Plaintiff, represented by Karen Menter-Lowe.  (T. at 27.)

At the hearing, Plaintiff testified that he suffers serious pain originating in his stomach, as well as nerve pain in his extremities, that he only has half of his pancreas, and that swelling and pain in his feet has caused him mobility issues.  (T. at 38-40.)  Plaintiff also testified that pain in his hands makes it difficult manipulate objects.  (T. at 41-42.)  He further reported vision

---

[1] The Administrative Transcript is found at Dkt. No. 8.  Citations to the Administrative Transcript will be referred to as "T." and the Bates-stamped page numbers as set forth therein will be used rather than the numbers the Court's CM/ECF electronic filing system automatically assigns.  All other page references to Docket entries refer to the pages assigned by the Court's CM/ECF electronic filing system.

difficulties such as eye complications due to diabetes, including swelling and bleeding behind the eyes, which necessitated two surgeries. (T. at 45.) He mentioned receiving shots in his eyes and reported that the surgery on his left eye had not improved his blurry and cloudy vision. *Id.*

On April 6, 2022, the ALJ issued a written decision finding Plaintiff was not disabled under the Social Security Act. (T. at 9.) Plaintiff requested review by the Appeals Council (T. at 257-58), and the ALJ's decision became the final decision of the Commissioner when Plaintiff's request for review was denied on April 13, 2023. (T. at 1.) Plaintiff timely commenced this action on May 24, 2023, challenging the Commissioner's decision. (Dkt. No. 1.)

## II.     APPLICABLE LAW

### A.  Scope of Review

In reviewing a final decision of the Commissioner, a court must first determine whether the correct legal standards were applied, and if so, whether substantial evidence supports the decision. *Atwater v. Astrue*, 512 F. App'x 67, 69 (2d Cir. 2013). "Failure to apply the correct legal standards is grounds for reversal." *Pollard v. Halter*, 377 F.3d 183, 189 (2d Cir. 2004) (internal quotation marks and citation omitted). A reviewing court may not affirm the ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence. *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987).

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision. 42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Sczepanski v. Saul*, 946 F.3d 152, 157 (2d Cir.

2020) (internal quotation marks and citation omitted). An ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision. *Roat v. Barnhart*, 717 F. Supp. 2d 241, 248 (N.D.N.Y. 2010); *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984). Where evidence is deemed susceptible to more than one rational interpretation, the ALJ's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's findings must be sustained "even where substantial evidence may support the plaintiff's positions and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). A reviewing court cannot substitute its interpretation of the administrative record in place of the Commissioner's if the record contains substantial support for the ALJ's decision. *See Rutherford*, 685 F.2d at 62.

    **B.** Standard for Benefits[2]

To be considered disabled, a plaintiff seeking disability benefits must establish that they are "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or

---

[2] While the Supplemental Security Income program has special economic eligibility requirements, the requirements for establishing disability under Title XVI, 42 U.S.C. § 1382c(a)(3) and Title II, 42 U.S.C. § 423(d), are identical, so "decisions under these sections are cited interchangeably." *Donato v. Sec'y of Health and Human Servs.*, 721 F.2d 414, 418 n.3 (2d Cir. 1983) (citation omitted).

can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. § 404.1520. The Supreme Court has recognized the validity of this sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). Under the five-step sequential evaluation process, the decision-maker determines:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

The plaintiff-claimant bears the burden of proof regarding the first four steps. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008) (quoting *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir.

1996)).  If the plaintiff-claimant meets their burden of proof, the burden shifts to the defendant-Commissioner at the fifth step to prove the plaintiff-claimant is capable of working.  *Id.*

**I.**     **THE ALJ'S DECISION**

In the April 6, 2022, decision, the ALJ applied the five-step sequential evaluation promulgated by the Commissioner for adjudicating disability claims.  (T. at 13.)  The ALJ found Plaintiff met the insured status requirements of the SSA until December 31, 2025.  (T. at 15.)  At the first step, the ALJ determined Plaintiff had not engaged in substantial gainful activity since the alleged onset date.  *Id.*  Next, the ALJ determined that Plaintiff has the following severe impairments: "type II diabetes mellitus and a history of chronic pancreatitis, status post resection, nephrectomy, and splenectomy."  *Id.*  The ALJ did not address Plaintiff's vision complaints at this time, either to find them severe or non-severe.  *Id.*  At step three, the ALJ determined Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1.  *Id.*  The ALJ noted specifically that "diabetes mellitus, is not met because there is no evidence of … a visual impairment."  *Id.*

The ALJ then found, based on the above-stated impairments, Plaintiff has the RFC to perform a "the full range of work at the light exertional level."  *Id.*  Since "[a]n actual determination of past relevant work will not have an effect on the legal outcome of this case," the ALJ proceeded to step five.  (T. at 18.)  The ALJ noted Plaintiff was 43 years old at the time of the decision, with a limited education.  *Id.*  The ALJ found transferability of job skills is not an issue because "the Medical-Vocational Rules directly supports a finding of 'not disabled'" either way.  *Id.*  Thus, the ALJ determined Plaintiff has not been under a disability, as defined in

the Social Security Act, from December 1, 2020, until the date of the ALJ's decision, April 6, 2022. (T. at 19.)

## II.     THE PARTIES' CONTENTIONS

Plaintiff contends the ALJ erred by failing to incorporate visual limitations into the RFC. (Dkt. No. 9 at 5.) Plaintiff notes he has been diagnosed with diabetic retinopathy, which is worsening over time. *Id.* He argues the two medical source statements in the record are stale, as the associated reviews occurred without the benefit of Plaintiff's most recent medical records. *Id.* at 6-7. Plaintiff asserts these stale records do not constitute substantial evidence to support the ALJ's RFC findings. *Id.*

Defendant argues Plaintiff's activities of daily living ("ADLs") do not support the existence of any serious visual limitations, and the ALJ considered those ADLs and concluded they indicate a lack of serious vision problems. ((Dkt. No. 10 at 5, 6.) Defendant also notes Plaintiff has the burden of proving more restrictive limitations than those demonstrated in the RFC, and he has not met that burden. *Id.* at 6.

## III.    THE COURT'S ANALYSIS

For the reasons set forth below, the ALJ's assignment of an RFC for light work with no visual limitations is not supported by substantial evidence because it relies on stale medical opinions, and the ALJ misconstrued Plaintiff's statements about the level of his ADLs.

At the administrative hearing, Plaintiff testified about his visual impairments. (*See* T. at 45.) He "get[s] shots in [his] eye" to treat complications "related to the diabetes." (*Id.*) His vision is "still kind of cloudy, blurry" after the shots, and he demonstrated that he was capable of reading text "just a couple inches from [his] eyes." (T. at 46.) Plaintiff mentioned he was able

7

to view "a great big TV" without issue but further indicated "I bet you I'm only six feet from the TV." *Id.*

Plaintiff's medical records demonstrate that he suffers from diabetic retinopathy. Treating Physician Assistant Jordan Hess saw Plaintiff at the Watertown Center for Sight on May 11, 2021, and noted Plaintiff presented with "Type 2 diabetes with diabetic retinopathy: both eyes, with macular edema, poor control." (T. at 1837.) His visual acuity without correction was measured at 20/50 on the right and 20/40 on the left, with pinhole vision of 20/30 in both eyes. (T. at 1827.) On June 16, 2021, Plaintiff was seen again at the Watertown Center for Sight, where his retinopathy was described as mild in severity. (T. at 1816.) He was also noted to have multiple microaneurysms of moderate severity. (T. at 1820.) On June 29, 2021, his visual acuity was measured as 20/50 in the right eye, 20/30 in the left, with pinhole vision of 20/50 in both. (T. at 1798.) He was counseled to return for Avastin injections in both eyes. (T. at 1822.) On December 8, 2021, Plaintiff underwent surgery to remove a cataract on his right eye. (T. at 1866.)

In assessing Plaintiff's RFC, the ALJ relied on the opinions of state agency reviewing physicians J. Randall, M.D., and S. Putcha, M.D. (T. at 18 (citing T. at 54-67, 69-84).) The ALJ found these opinions "generally persuasive," noting that the doctors "had the opportunity to review all available medical evidence of record, and their opinions are supported with details and citations to the record and are generally consistent with the overall development of the medical evidence of record." *Id.* The ALJ also noted "there are no contrary opinions." *Id.*

Dr. Randall's opinion is dated March 29, 2021, which is more than a month prior to Plaintiff's May 11, 2021, diagnosis of diabetic retinopathy. (T. at 67, 1837.) He assessed Plaintiff as having no visual limitations. (T. at 62.) Dr. Putcha's opinion is dated May 13, 2021.

8

(T. at 84.) Dr. Putcha did not examine any of Plaintiff's records from Watertown Center for Vision since he did not receive or review any records after May 4, 2021. (*See* T. at 71-74.) Dr. Putcha also assessed Plaintiff as having no visual limitations. (T. at 78.) Based on the evidence available at the time, these are reasonable conclusions. However, for the purpose of fully assessing Plaintiff's visual condition of diabetic retinopathy, both Dr. Randall's and Dr. Putcha's opinions are stale. "'A medical opinion may be stale if it does not account for the claimant's deteriorating condition.'" *Biro v. Comm'r of Soc. Sec*, 335 F. Supp. 3d 464, 470 (W.D.N.Y. 2018) (quoting *Carney v. Berryhill*, No. 16-CV-269 (FPG), 2017 WL 2021529, at *6 (W.D.N.Y. May 12, 2017)).

"Plaintiff bears the burden at step four and must show that [his] physical condition deteriorated after the medical opinions were provided." *Sandra W. v. Comm'r of Soc. Sec.*, 3:21-CV-599 (DJS), 2022 WL 1115404, at *3 (N.D.N.Y. Apr. 14, 2022) (citing *Tracy Lynn L. v. Comm'r of Soc. Sec.*, 1:20-CV-0942 (WBC), 2021 WL 5851187, at *7 (W.D.N.Y. Dec. 9).) Plaintiff has demonstrated that his vision "seems to be gradually worsening with time" based on examinations conducted after May 13, 2021. (T. at 1785.) Plaintiff cites specifically to records from the Watertown Center for Sight which reveal that he received an Avastin injection in his right eye for the first time on June 22, 2021 (*id.* (citing T. at 1804)); that Plaintiff received an Avastin injection in his left eye on June 29, 2021 (*id.* (citing T. at 1779)); that his distance and near vision was stable but "poor" as of July 13, 2021, when he also chose to pursue cataract surgery (*id.* at 5-6 (citing T. at 1785)); that he continued to suffer from edema in his eyes as of August 3, 2021 (*id.* at 6 (citing T. at 1774) (also noting Plaintiff reports his vision to be "cloudy")); and that he underwent cataract surgery on December 8, 2021 (*id.* at 6 (citing T. at 1868)).

The ALJ's analysis does not adequately address this deterioration. As the ALJ notes, Plaintiff once enjoyed "softball and hunting," sports that require a high degree of visual acuity. (T. at 17 (citing T. at 343).) The ALJ relies on this, and Plaintiff's other activities of daily living, as evidence contradicting the severity of his symptoms. (T. at 17.) However, the Function Report from which this information is drawn is dated February 8, 2020, more than a year prior to Plaintiff's diagnosis of diabetic retinopathy. (T. at 349.) The section the ALJ cites from is labeled "What were you able to do *before* your illness, injuries, or conditions that you can't do now?" (T. at 343 (emphasis supplied).) There is a later section, labeled "Hobbies and Interests," where Plaintiff again notes he is largely unable to participate in these activities. (T. at 346.) Plaintiff stated "Hunting – now physically unable to drag deer on own. Softball – tire quickly, unable to run, only can play for short periods – sugar drops quickly." *Id.* The ALJ also cited to Plaintiff's records from Rochester Regional Health, where Plaintiff stated on January 17, 2020, that he "plays softball during the summers, and went hunting this past fall, dragging deer himself." (T. at 1447.) This statement describes activities that precede the diagnosis of diabetic retinopathy and occurred in the context of "a rather extensive resection" of Plaintiff's pancreas, a surgical intervention made necessary by a painful "pancreatic multicystic structure measuring up to 11.9 x 8.2 x 12.0 cm at greatest extent." (T. at 1450-51.)

The ALJ also considered Plaintiff's ADLs including his ability to care for his own hygiene, go outside daily, cook meals, and do housework as being consistent with an RFC for light work. *Id.* Indeed, the ALJ was required to consider Plaintiff's ADLs along with all the medical evidence in making the RFC determination. 20 C.F.R. § 404.1545(a)(3). Specifically, the ALJ was required to evaluate "descriptions and observations of [Plaintiff's] limitations … including limitations that result from [Plaintiff's] symptoms, such as pain, provided by

[Plaintiff]. …" *Id.* While the ALJ met this burden regarding Plaintiff's ADLs *prior* to the diagnosis of diabetic retinopathy, the evidence cited by the ALJ to mitigate the severity of Plaintiff's visual impairment predated that diagnosis, and the ALJ appears to have misconstrued Plaintiff's statements about his ALDs.

Plaintiff's RFC does not reflect the existence of a vision impairment through non-exertional limitations, and the ALJ has not provided a legally supportable rationale for this conclusion. This is not a case "[w]here application of the correct legal principles to the record could lead to only one conclusion," because a properly formulated RFC may well indicate that significant jobs exist in the local or national economy which a person with Plaintiff's impairments could perform. *Johnson v. Bowen*, 817 F.2d at 983, 986 (2d Cir. 1987) (citing *Havas v. Bowen*, 804 F.2d 783, 786 (2d Cir. 1986)). Remand is appropriate because a "searching review of the record" provides no assurance that the "substance of the … rule was not traversed." *Estrella v. Berryhill*, 925 F.3d 90, 97 (2d Cir. 2019) (quoting *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004)).

The ALJ's failure to fully evaluate Plaintiff's complaints of visual limitations by considering the medical records generated after the state agency reviewing physicians' reports or incorporate visual limitations in the RFC is harmful error because it may have significantly constricted the jobs available to Plaintiff in the national economy. The Social Security Administration has determined that

> a visual impairment which is not Listing severity but causes the person to be a hazard to self and others – usually a constriction of visual fields rather than a loss of acuity … will indicate to the decisionmaker that the remaining occupational base is significantly diminished for light work.

SSR 83-14, *Titles II and XVI: Capability to Do Other Work*, 1983-1991 Soc. Serv. Rep. Serv. 41, 1983 WL 31254, at *5 (Jan. 1, 1983). An ALJ's failure to adequately address a visual limitation in assigning a claimant's RFC can be a harmless error when the first evidence of the visual limitation is produced beyond the date last insured. *Bruno v. Saul*, No. 8:20-CV-14 (TGW), 2021 WL 1086187, at *4 (M.D. Fla. Mar. 22, 2021). This is not the case here because Plaintiff will continue to meet the insured requirements of the SSA until December 31, 2025. (T. at 15.) An ALJ's failure to adequately address a visual limitation can be a harmless error when "no reports or opinions from any physician" support Plaintiff's complaints. *Edwards v. Astrue*, 5:07-CV-898 (NAM/DEP), 2010 WL 3701776, at *10 (N.D.N.Y. Sep. 16, 2010). That is likewise not the case here, as Plaintiff's visual impairments have been established objectively in medical reports. (*See, e.g.,* T. at 1837, 1866.) An ALJ can certainly consider evidence of improvement after eye treatment and surgery when evaluating a Plaintiff's subjective complaints, but the ALJ did not do so here. *Sean Michael S. v. Comm'r of Soc. Sec.* 5:20-CV-0942 (DEP), 2021 WL 5918922, at *10 (N.D.N.Y. Dec. 15, 2021).

Moreover, harmless error analysis does not resolve this issue because the ALJ did not provide Dictionary of Occupational Titles ("DOT") Job Codes representative of significant jobs in the local or national economy which Plaintiff might be capable of performing. Citation to specific DOT Job Codes might have demonstrated the ALJ's failure to incorporate non-exertional limitations to be a non-issue, if the relevant Job Codes correspond to jobs which do not require good vision. *See John S. v. Kijakazi*, 1:20-CV-1468 (GTS), 2022 WL 866548, at *11 (N.D.N.Y. Mar. 23, 2022) (finding harmless error where an ALJ failed to incorporate postural limitations, but cited DOT Job Codes which "do not require these types of movements.") The ALJ did not obtain input from a Vocational Expert ("VE") at the administrative hearing,

although she attempted to secure the presence of a VE months in advance, to no avail. (T. at 27-28, 255-56.) The ALJ therefore made her determination at step five according to the Medical-Vocational Guidelines, and "a finding of 'not disabled' [was] directed by Medical-Vocational Rule 202.18." (T. at 18-19.)

The ALJ's failure to adequately consider Plaintiff's visual impairments as part of the RFC determination renders the RFC unsupported by substantial evidence. 20 C.F.R. §§ 404.1520(d)-(e), 416.920(d)-(e). Harmless error analysis does not resolve this issue, and since this Court cannot "'glean the rationale of [the] ALJ's decision'" from the evidence of record, remand is required. *Cichocki*, 534 F. App'x at 76 (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983)).

Thus, this matter should be remanded to the Social Security Administration for further proceedings. On remand, the Social Security Administration should consider the most recent medical evidence in Plaintiff's record and assess whether Plaintiff's visual impairments create non-exertional limitations which significantly restrict the jobs available to him in the local and national economy. If so, the testimony of a VE should be obtained.

### IV.    CONCLUSION

**WHEREFORE,** for the reasons stated herein, it is hereby

**RECOMMENDED**, that the Plaintiff's motion for judgment on the pleadings (Dkt. No. 9) be **GRANTED; and it is further**

**RECOMMENDED**, that Defendant's motion for judgment on the pleadings (Dkt. No. 10) be **DENIED;** and it is further

**RECOMMENDED** that the Commissioner's decision be **REVERSED AND REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **<u>FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW</u>**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

Dated: July 23, 2024

*[signature]*
Thérèse Wiley Dancks
United States Magistrate Judge

Syracuse, New York